**ADANTÉ D. POINTER, ESQ., SBN 236229**
**PATRICK M. BUELNA, ESQ., SBN 317043**
**TY CLARKE, ESQ., SBN 339198**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
155 Filbert St., Suite 208
Oakland, CA 94607
Tel: 510-929-5400
Website: www.LawyersFTP.com
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com
Email: TClarke@LawyersFTP.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, an individual;<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, a municipal corporation; WILLIAM SCOTT, in his individual capacity as Chief of Police of the San Francisco Police Department; MARK POWELL, in his individual capacity as Crime Laboratory Director of the San Francisco Police Department; KELLEY FRACCHIA, in her individual capacity as criminalist for the San Francisco Police Department; SYLVIA LANGE, in her individual capacity as an officer of the San Francisco Police Department; and DOES 1-50, inclusive.<br><br>　　　　　Defendants. | Case No.: 3:22-cv-05179-AGT<br><br><u>SECOND AMENDED COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF</u><br>(42 U.S.C. § 1983)<br><br><u>JURY TRIAL DEMANDED</u> |

# INTRODUCTION

1. This case brings to light the San Francisco Police Department's shocking practice of placing crime victims' DNA into a permanent database without the victims' knowledge or consent. Law enforcement officers test the victims' DNA for matches in every subsequent criminal investigation in which genetic material is recovered without any reasonable basis to suspect the victims are in any way connected to these completely unrelated crime scenes. There are reportedly thousands of people who are being subjected to this arbitrary, unlawful unconstitutional invasion of privacy.

2. Plaintiff Jane Doe, a sexual assault survivor, was re-victimized by this unconstitutional practice. In 2016, she provided a DNA sample to the San Francisco Police Department as part of its investigation into her sexual assault. However, she never consented to it to be stored or used for any other purpose. Nevertheless, the Department maintained Plaintiff Doe's DNA in the database for more than six years. During this time, the crime lab routinely ran crime scene evidence through this database that included Plaintiff's DNA without ever attempting to get her consent or anyone else's consent. Her DNA was tested in thousands of criminal investigations, though the police had absolutely no reason to believe that she was involved in any of the incidents.

3. Defendant Mark Powell, director of the San Francisco Police Department Crime Laboratory, characterized this shocking use of crime victims' DNA as standard procedure.[1]

4. In December of 2021, Defendant City and County of San Francisco used an alleged match between crime scene evidence and Plaintiff Doe's unconstitutionally-maintained DNA

---

[1] https://www.ktvu.com/news/use-of-rape-kit-dna-in-san-francisco-to-probe-other-crimes-shocks-prosecutors

**FIRST AMENDED COMPLAINT FOR DAMAGES & INJUNCTIVE RELIEF**
**DOE V. CCSF**
- 2 -

sample to arrest her on allegations of burglary. While all charges stemming from this incident against Plaintiff Doe were eventually dropped, the appalling, exploitative, and unconstitutional nature of Defendants' practice cannot be ignored.

## JURISDICTION

5. This action arises under Title 42 of the United States Code, Section 1983. Title 28 of the United States Code, Sections 1331 and 1343 confers jurisdiction upon this Court. The unlawful acts and practices alleged herein occurred in San Francisco, California, which is within this judicial district. Title 28 United States Code Section 1391(b) confers venue upon this Court.

## PARTIES

6. Plaintiff JANE DOE (hereinafter "Plaintiff DOE") is a competent adult, a resident of California, and a citizen of the United States. Plaintiff brings this action under a pseudonym in order to preserve her anonymity and protect her privacy as a survivor of sexual assault.[2]

7. Defendant CITY & COUNTY OF SAN FRANCISCO (hereinafter "Defendant CCSF"), is a municipal entity duly organized and existing under the laws of the State of California that manages and operates the San Francisco Police Department.

8. Defendant WILLIAM SCOTT (hereinafter "Defendant Scott") was, and at all times herein is, the police chief of the San Francisco Police Department and Defendant CCSF and is sued in his individual capacity.

---

[2] "[A] party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Does 1 thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068 (9th Cir. 2000).

9. Defendant MARK POWELL (hereinafter "Defendant Powell") was, and at all times herein is, the director of the San Francisco Police Department Crime Laboratory and an employee of Defendant CCSF and is sued in his individual capacity.

10. Defendant KELLEY FRACCHIA (hereinafter "Defendant Fracchia") was, and at all times herein is, a criminalist for the San Francisco Police Department and Defendant CCSF and is sued in his individual capacity.

11. Defendant SYLVIA LANGE (hereinafter "Defendant Lange") was, and at all times herein is, an officer of the San Francisco Police Department and Defendant CCSF and is sued in her individual capacity.

12. Plaintiff is ignorant of the true names and capacities of Defendants DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each Doe Defendant is legally responsible and liable for the incident, injuries, and damages hereinafter set forth. Each Doe Defendant proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control, violation of public policy, unlawful search/seizure, and/or unlawful arrest. Each Doe Defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission. Plaintiff will ask leave to amend this complaint subject to further discovery.

13. In doing the acts alleged herein, Defendants, and each of them, acted within the course and scope of their employment for Defendant CCSF.

14. In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, and employee and/or in concert with each of said other Defendants herein.

15. Plaintiff filed a timely government with Defendant CCSF on March 10, 2022, which was rejected by Defendant CCSF on July 19, 2022.

## FACTUAL ALLEGATIONS

*Defendant CCSF instituted and maintained an unconstitutional DNA database of crime victims' DNA without the victims' consent or knowledge*

16. Since at least 2015, the City and County of San Francisco (hereinafter "Defendant CCSF") has had a policy and/or practice of placing DNA samples taken from crime victims as part of the investigation into the crimes they suffered and/or reported into a "quality assurance" database without the victims' consent or knowledge. Defendant CCSF maintained the victims' DNA in the database into perpetuity and tested any genetic material taken from any and all subsequent crime scenes against all DNA samples in the "quality assurance" database in an effort to produce law enforcement leads, investigations, connect suspects and produce reasonable suspicion/probable cause.

17. Despite the innocuous title of "quality assurance", the DNA database's primary purpose was not to maintain the alleged integrity of any purported DNA database within CCSF. Defendant CCSF was using the DNA collected in the database to search, compare and analyze against DNA evidence discovered at crime scenes over the years in search of leads and suspects because this secondary, database expanded far beyond the legal, accessibly database of CODIS.

18. It is well known that CODIS, a federally regulated and controlled FBI database, is accessible to law enforcement officers and employees for the purpose of comparing DNA collected at crime scenes to a DNA database of criminally convicted persons whose DNA has been legally acquired.

19. As such, it appears that the sole purpose of comparing crime scene samples against a DNA database with DNA collected from victims that suffered sexual assaults and other sex crimes (i.e. DNA that would not be found or collected into CODIS) accessible by its criminalists was to have a secondary database to use and compare crime scenes against a DNA database that expanded beyond CODIS.

20. Upon information and belief, Defendant Mark Powell – the Direct of Forensic Services and the criminal laboratory – ordered to be maintained collected samples in the secondary database that had not been acquired legally from convicted criminals that corresponded to CODIS but rather had surreptitiously been gathered from not only CCSF employees but criminal victims and witnesses to be compared against DNA samples taken from crime scenes to produce criminal leads, investigations, detentions and arrests.

21. Likewise, Sgt. Lange was a supervisor privy to and participated in the use of DNA samples taken from criminal victims and witnesses that were matched to crime scene and compared against DNA samples taken from crime scenes to produce criminal leads, investigations, detentions and arrests.

22. Defendant Mark Powell's procedure of collecting DNA samples from unsuspecting criminal victims, witnesses and CCSF employees that were then stored and compared against crime scenes was taught, trained, and expected of all of Defendant CCSF's criminalists and investigating SFPD officers.

23. This was precisely what happened when Defendant CCSF's criminalist Kelley Fracchia – who had been trained on the procedure - ran DNA collected at a crime in 2021 against the DNA of victims and witnesses in the secondary database – not included in CODIS - and discovered that Plaintiff's name matched the secondary database then used this finding in a

forensic report that was provided to Sgt. Lange – who knew of this procedure and so made no protests, remonstrations or objections – but instead obtained a warrant with a probable cause basis to arrest Plaintiff predicated on the DNA match from the database.

24. Upon information and belief, Defendant Chief Scott was the Chief of Police for the San Francisco Police Department before, during and after the arrest of Plaintiff. As the Chief, Defendant Scott reviewed, edited and managed all of the important procedures, policies and training of the different agencies within his department. In fact, Defendant Scott – more specifically – personally meets and confers with his assistant chiefs, deputy chiefs and directors about the policies, procedures and trainings of the department to ensure they are compliant with the Constitution and law enforcement standards.

25. Upon information and belief, Defendant Scott met with his Director Powell who explained to him the procedures the crime lab had in place for comparing DNA evidence collected at crime scenes to the department's secondary database. Defendant Powell explained to Defendant Scott that not only did the secondary database exist but it was used to compare against crime scenes to create leads, investigations, detentions and arrests. Defendants Scott did not protest, object or order the searches and secondary database to end despite the articulated purpose to create leads, investigations, detentions and arrests based off DNA evidence submitted from witness/victims for the prosecution of crimes against them.

26. Upon information and belief, the existence of this secondary database means that once a crime victim, witness or employee DNA – or however DNA was acquired from un-consenting victims, witnesses and bystanders - was taken by Defendant CCSF or came into their possession in any manner, it would be tested for a match against DNA taken from every subsequent crime

scene in which genetic material was recovered, regardless of whether it had any relation to the crime suffered by the victim or person.

*Plaintiff Jane Doe was unlawfully arrested by Defendant Officers in reliance on a DNA sample she provided years prior as a sexual assault victim*

27. On November 8, 2016, law enforcement officers of Defendant CCSF took a sample of Plaintiff Jane Doe's DNA as part of an investigation into the sexual assault of Plaintiff Doe. These officers led Plaintiff Doe – in accordance with Defendants Scott, Powell & Lange's procedures – to believe that her DNA would not be used for any purposes other than investigating her sexual assault. Upon information and belief, there exists a written agreement that expressly informed Plaintiff that her DNA would not be used for any purposes other than investigating her sexual assault.

28. Defendants instead maintained Plaintiff Doe's DNA in the secondary database from 2016 until at least February 2022. In that time, Plaintiff's DNA was tested against crime scene DNA samples in hundreds, if not thousands of cases.  Plaintiff Doe never consented to her DNA being used in this context or any context other than the investigation into the sexual assault she reported – nor did any other person within the secondary database.

29. On or about December 6, 2021, Defendant CCSF's employee Kelley Fracchia, a criminalist for the San Francisco Police Department, ran the DNA sample along with other witness & victim samples against DNA samples allegedly taken from the scene of a burglary through Defendant CCSF's database that found a match with Plaintiff.

30. Upon information and belief, Defendant Scott and Powell had formulated policies and trainings that explained to Defendant Fracchia the procedures of properly obtaining DNA evidence to be used in a criminal case and that the secondary DNA database had been collected from unconsenting persons – but nevertheless would be used to create leads, detentions and

arrests. However, these procedures of using the secondary database would be done surreptitiously with the cooperation of the SFDA – but was promptly *and only exposed* – because the new district attorney Chesa Boudin disagreed and recognized the unconstitutional nature of the secondary database and leads – refused to use the leads and exposed them. Otherwise, the public, the victims, witnesses and persons with DNA in the secondary database would continue to be compared and used for law enforcement purposes to this day.

31. On or about December 10, 2021, Defendant Fracchia sent a forensic report to Defendant Sylvia Lange, a sergeant in the San Francisco Police Department, where she indicated that the DNA allegedly taken from the crime scene matched the DNA sample taken from Plaintiff Doe in 2016.

32. Upon information and belief, Defendant Lange understood this report to mean that Plaintiff's DNA sample taken and stored the secondary database resulting from her being either a witness, victim or CCSF employee had matched to the crime scene but nevertheless obtained a warrant for Plaintiff – knowing per Sgt. Lange's training this was unlawful to obtain a warrant based off evidence collected in this manner – and had her arrest. Citing this report, Defendant Lange had Plaintiff Doe arrested on burglary allegations.

33. Defendant Doe Officers later arrested and charged Plaintiff Doe with several burglary-related offenses in reliance on the unlawfully obtained search warrant. All charges against Plaintiff Doe were later dropped after the SFDA objected to the manner Plaintiff was connected to the crime and exposed the secondary database's iniquitous use.

## DAMAGES

34. As a proximate result of each of the Defendants' negligence and violations of Plaintiffs' federal civil rights under 42 U.S.C. §1983 and the Fourth Amendment, Plaintiff suffered

injuries, emotional distress, fear, terror, anxiety, and loss of sense of security, dignity, and pride as United States Citizen.

35. As a direct and proximate result of each Defendant's acts and/or omissions as set forth above, Plaintiff sustained the following injuries and damages, past and future, among others:

   a. Medical expenses;
   b. Pain and suffering, including emotional distress;
   c. Violation of constitutional rights;
   d. All damages, penalties, and attorneys' fees and costs recoverable under 42 U.S.C. §§ 1983, 1988; California Civil Code §§ 52, 52.1, California Code of Civil Procedure § 1021.5, and as otherwise allowed under California and United States statutes, codes, and common law.

36. The conduct of Defendants SCOTT, POWELL, FRACCHIA, LANGE, and DOES 1-50 was malicious, wanton, oppressive, and in reckless disregard of the right and safety of Plaintiff and the public. Plaintiff is therefore entitled to an award of punitive damages against Defendants SCOTT, POWELL, FRACCHIA, LANGE, and DOES 1-50.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Fourth Amendment – Unlawful Search/Seizure under 42 U.S.C. Section 1983)**
*(Plaintiff against Defendants FRACCHIA, LANGE and DOES 1-50)*

37. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

38. Defendants took Plaintiff's DNA under the pretenses of using it to investigate the sexual assault that Plaintiff survived. Plaintiff did not consent to the use of her DNA for any purpose other than the investigation of the crime she suffered and reported.

39. Nevertheless, Defendants still placed Plaintiff's DNA into the so-called "quality assurance" database and tested Plaintiff's DNA against every subsequent genetic material sample taken from any crime scene investigated by law enforcement in San Francisco.

40. Each one of Defendants' test of crime scene DNA against Plaintiff's DNA in the "quality assurance" database was an unlawful search because Plaintiff never consented to such a search and the Defendants had no reasonable suspicion that Plaintiff had any connection to any of these crime scenes.

41. On December 6, 2021, Defendant FRACCHIA tested crime scene DNA allegedly taken from a site of a burglary against Plaintiff's DNA sample that was unlawfully maintained in the "quality assurance" database. Defendants LANGE used the DNA match for a warrant to arrest/seize and arrested Plaintiff based on the unconstitutional DNA match.

42. As a result of their misconduct, Defendants FRACCHIA, LANGE and DOES 1-50 are liable for Plaintiff's injuries.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
**(Municipal Liability for Unconstitutional Custom or Policy (*Monell*))**
*(Plaintiff against Defendants SCOTT and CCSF DOES 1-50)*

43. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

44. Since at least 2015, Defendant CCSF has implemented and maintained a policy and/or practice of maintaining crime victims' DNA—supposedly taken for the purpose of investigating the crimes they suffered—in a "quality assurance" database into perpetuity, even when the victims' cases have long been resolved. Defendant CCSF's law enforcement officers and/or crime laboratory employees then tested every DNA sample taken from subsequent crime scenes

that were investigated by the San Francisco Police Department, even when there was no reason to believe that the victims were in any way connected to these crimes.

45. On information and belief, Defendant CCSF's policy and/or practice has led to thousands of unconstitutional searches of crime victims' genetic material.

46. This policy and/or practice has been designed, implemented, and/or continued by Defendants SCOTT, and Doe Defendants, who are or were high-ranking policy makers with Defendant CCSF and the San Francisco Police Department. Defendants did so despite having notice that the policy and/or practice was plainly unconstitutional.

47. Defendants FRACCHIA, LANGE, and Defendant Doe Officers' unlawful search of Plaintiff's DNA and subsequent false arrest of Plaintiff based on this unconstitutionally-derived alleged evidence was in accordance with and motivated by Defendant CCSF's practice and/or policy of obtaining crime victims' DNA under false pretenses and thereafter maintaining the victims' DNA in the "quality assurance" database so that they may be used for future unlawful searches.

48. As a direct and proximate result of Defendant CCSF's unconstitutional policies and/or practices, Plaintiff sustained serious damages and are entitled to damages, penalties, costs, and attorneys' fees as set forth in paragraphs above.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**(Negligence)**
*(Plaintiff against Defendants SCOTT, POWELL, FRACCHIA, LANGE, CCSF, and DOES 1-50)*

49. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

50. At all times, all Defendants owed Plaintiff the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

51. At all times, all Defendants owed Plaintiff the duty to act with reasonable care.

52. These general duties of reasonable care and due care owed to Plaintiff by Defendants include but are not limited to the following specific obligations:

   a. To refrain from using unlawful searches and/or seizures against Plaintiff, including unlawful retention and searching of her genetic material;

   b. To refrain from abusing their authority granted them by law;

   c. To refrain from violating Plaintiff's rights guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

53. Defendants, through their acts and omissions, breach each and every one of the aforementioned duties owed to Plaintiff.

54. Defendant CCSF is vicariously liable for the wrongful acts and omissions of its employees and agents pursuant to California Government Code § 815.2.

55. As a direct and proximate result of Defendants' negligence, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief as set forth above.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
**(Violation of the Bane Act (Cal. Civ. Code § 52.1))**
*(Plaintiff against Defendants SCOTT, POWELL, FRACCHIA, LANGE, CCSF, and DOES 1-50)*

56. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

57. Plaintiff brings this "Bane Act" claim individually for direct violation of her own rights.

58. By their conduct described herein, Defendants and DOES 1-50, acting in concert/conspiracy, as described above, violated Plaintiff's rights under California Civil Code § 52.1, and the following clearly-established rights under the United States Constitution and the California Constitution:

   a. Plaintiff's right to be free from unreasonable searches and seizures as secured by the Fourth Amendment to the United States Constitution and by Article I, § 13 of the California Constitution;

59. Unreasonable search and seizure which violates the Fourth Amendment also violates the Bane Act.

60. Further, any volitional violation of rights done with reckless disregard for those rights also satisfied the "by threat, intimidation, or coercion" requirement of the Bane Act. All of Defendants' violations of duties and rights were volitional, intentional acts, done with reckless disregard for Plaintiff's rights; none was accidental or merely negligent.

61. Alternatively, Defendants violated Plaintiff's rights by the following conduct constituting threat, intimidation, or coercion that was above and beyond any lawful seizure, search, detention, or arrest:

   a. Obtaining Plaintiff's DNA under the pretenses of investigating the sexual assault that Plaintiff survived, the only purpose for which Plaintiff consented to Defendants' use of her DNA;

   b. Maintaining Plaintiff's DNA in a "quality assurance" database for years after the investigation into the aforementioned sexual assault was completed;

   c. Testing Plaintiff's DNA against every genetic material sample recovered from subsequent crime scenes without Plaintiff's consent or any reasonable suspicion to believe Plaintiff was involved in that specific criminal investigation;

      d.  Unlawfully searching Plaintiff's DNA each and every time it was tested against crime scene DNA, amounting to hundreds if not thousands of unlawful searches;

      e.  Violating multiple rights of Plaintiff;

62. Defendant CCSF is vicariously liable, pursuant to California Government Code § 815.2, for the violation of rights by its employees and agents.

63. As a direct and proximate result of Defendants' violation of California Civil Code §52.1 and of Plaintiff's rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against all Defendants and is entitled to relief as set forth above, including punitive damages against Defendants SCOTT, POWELL, FRACCHIA, LANGE, and DOES 1-50, and including all damages allowed by California Civil Code §§ 52, 52.1, and California law, not limited to costs, attorneys fees, treble damages, and civil penalties.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth

### SIXTH CAUSE OF ACTION
**(Supervisor Liability)**

**(**Plaintiffs Against Defendant SCOTT AND POWELL and DOES 1-50)

64. Plaintiff hereby re-alleges and incorporates by reference each and every paragraph of this Complaint.

65. Both Defendants POWELL and SCOTT were aware of, supervised and monitored Defendant CCSF's police department, its policies and procedures for obtaining probable cause, reasonable suspicion and investigation of crime scene.

66. Defendant WILLIAM SCOTT was directly responsible for the constitutional and ethical management of the police departments policies and procedures while DEFENDANT POWELL was directly responsible for the evidence department's policies and procedures for obtaining and analysing DNA and crime scene matches in a constitutional and ethical manner. Both

Defendants were aware of, managed and supervised the practice of having a secondary database outside the scope of CODIS to use to compare and create leads for law enforcement officers.

67. As such, both Defendants set in motion and/or failed to prevent occurrences of the constitutional violations Plaintiff suffered when her DNA was collected into the secondary database and used for crime scene searches and ultimately to prosecute her.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## JURY DEMAND

68. Plaintiff hereby demands a jury trial in this action.

## PRAYER

Wherefore, Plaintiff prays for relief as follows:

a. For general damages in a sum to be proven at trial;
b. For special damages, including but not limited to, past, present, and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;
c. For punitive damages against Defendants SCOTT, POWELL, FRACCHIA, LANGE, and DOES 1-50 in a sum according to proof;
d. All other damages, penalties, costs, interest, and attorney fees as allowed by 42 U.S.C. §§ 1983 and 1988, Cal. Civil Code §§ 52 et seq., 52.1, and as otherwise may be allowed by California and/or federal law;
e. For the cost of suit herein incurred; and
f. For injunctive relief in the form of an Order:
   i. Removing Plaintiff's DNA from Defendant CCSF's permanent database
   ii. Prohibiting Defendant CCSF from storing crime victim's DNA in a permanent database
   iii. Prohibiting Defendant CCSF from storing crime victim's DNA in a permanent database and providing access to law enforcement personnel and others without crime victim's consent
g. For such other relief as the Court deems just and proper.

Dated: February 10, 2023

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE

/s/ Patrick Buelna
PATRICK BUELNA
Attorney for PLAINTIFF